IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD BOONE II, COURIE BRYANT | § | |
| GARY DOLLAR, JASON GORDON, | § | |
| JAMES GROOM, RYAN PAYNE, | § | |
| RODERICK ROBINSON and | § | |
| JAMES WHITE, | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| v. | § | Civil Action No.  3:13-cv-04477-P |
| | § | JURY |
| | § | |
| CITY OF RED OAK, TEXAS and | § | |
| CRAIG RUDOLPH, Individually, | § | |
| *Defendants.* | § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs COURIE BRYANT, JAMES GROOM, RYAN PAYNE, and RODERICK

ROBINSON (collectively "Plaintiffs") file this Second Amended Complaint against Defendant

CITY OF RED OAK, TEXAS ("City"), Defendant CRAIG RUDOLPH in his Individual

Capacity ("Rudolph") and Defendant BOYD BROCK in his Individual Capacity (collectively

"Defendants"), and would show as follows:

### A. Parties

1.      Plaintiff COURIE BRYANT ("Bryant") brings this action individually.  Plaintiff Bryant

was formally employed by Defendant City as a police officer.

2.      Plaintiff JAMES GROOM ("Groom") brings this action individually.  Plaintiff Groom

was previously employed by Defendant City as a police officer.

3.      Plaintiff RYAN PAYNE ("Payne") brings this action individually.   Plaintiff Payne

resides in Ellis County, Texas and was employed by Defendant City as a police officer.

4.      Plaintiff RODERICK ROBINSON ("Robinson") brings this action individually.  Plaintiff Robinson is employed by Defendant City as a police officer.

5.      Defendant City is a municipality in the State of Texas.  Defendant City has made an appearance in the above-referenced matter.

6.      Defendant CRAIG RUDOLPH ("Rudolph") is the former Chief of Police for the City of Red Oak, Texas. Defendant Rudolph has made an appearance in this matter.

7.      Defendant BOYD BROCK ("Brock") is an individual and had made an appearance in this matter.   The claims against Defendant Brock are **limited** to Plaintiff Payne's First Amendment retaliation claim pursuant to 42 U.S.C. §1983.

## B.  Jurisdiction and Venue

8.      This case is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e *et. seq.*; and 42 U.S.C. § 1983.

9.      This Court has jurisdiction over this matter according to 28 U.S.C. § 1331; 28 U.S.C. § 1343; 42 U.S.C. §2000e; and 42 U.S.C. § 1983.

10.     The court has jurisdiction over the state law claims of a violation of the Texas Commission on Human Rights Act, Section 21.051 et seq. of the Texas Labor Code ("TCHRA) by virtue of 28 U.S.C. §1367.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the events or omissions giving rise to the claim occurred in the District.

### C.  Exhaustion of Administrative Remedies

12.     Plaintiffs Bryant and Robinson timely filed a charge of discrimination against Defendant

City with the Equal Employment Opportunity Commission.  ("EEOC").

13.     Plaintiffs Bryant and Robinson filed their Original Complaint within 90 days after

receiving the notice of the right to sue from the EEOC.

### D. Facts

14.     Defendant's City is a home rule city whose power is conferred by the Charter of the City

of Red Oak, Texas.  Charter states the following:

- Section 1.05:  "All powers of the City shall be vested in an elective council … referred to as the 'Council'".

- Section 1.17:  The Council shall provide "for the establishment, maintenance, support and regulation of a Police Department."

- Section 3.01: "All powers and authority, including determination of all matters of policy, which are expressly or by implication conferred on or possessed by the City, shall be vested in and exercised by the Council; provided, however, that the Council shall have no authority to exercise those powers which are expressly conferred upon other City officers by this Charter."

- Section 3.05:  "The City Manager shall be the chief administrative officer and the head of the administrative branch of the City.  Except for the purpose of inquiry or investigation, the Council and its members shall deal with the administrative departments and personnel solely through the City Manager, and no member of the Council shall give orders to any subordinate of the City Manager, either publicly or privately."

- Section 4.09: "The head of each department shall be a chief… who shall be appointed by the City Manger, subject to the approval of the Council and such chief … shall have supervision and control over his department..."

- Section 4.14: "The City Manager shall be responsible to the Council for the proper administration of all the affairs of the City and to that end shall have the power and be required to: … (10) prepare personnel rules subject to the approval of the Council."

15.     During the relevant time period, Defendant Rudolph served as Chief of Police for the City; therefore, Defendant Rudolph was the Head of the City's Police Department.

16.     All employees of the police department are governed by the rules of the City of Red Oak, the City Personnel Rules, and the Policy and Procedure Manual of the Police Department.

### 1. The Discriminatory Working Environment

17.     Defendant Rudolph created a hostile working environment based on racial, ethnic and gender discrimination.

18.     Specifically, Defendant Rudolph regularly and consistently used derogatory terms to describe racial and ethnic minorities.   For example, Defendant Rudolph regularly and consistently referred to persons from Afghanistan as "towel heads" and consistently referred to African-American persons as "nigger". On a consistent and regular basis, Defendant Rudolph made no effort to conceal how he felt about racial and ethnic minorities and how officers should deal with racial and ethnic minorities.

19.     In additional to his regular and consistent verbal attacks and references to racial and ethnic minorities in the workplace, Defendant Rudolph treated African-American police officers differently than white police officers.   For example, Defendant Rudolph required Plaintiff Bryant, an African American male, to undergo a physical agility test and a written exam. Defendant Rudolph did not require white police officers to take a physical agility test and/or written exam.

20.     In fact racial and ethnic hostility was such the norm that one day, Plaintiff Bryant logged onto his computer and discovered a desktop picture of a dark-colored animated monkey in a police uniform. Defendant Rudolph, Head of the Police Department and supervisor over Plaintiff Bryant along with two lieutenants, was standing near Plaintiff Bryant when this incident

occurred and observed said picture of the dark-colored animated monkey in a police uniform. Knowing that Defendant Rudolph was standing right there and observing this incident, Plaintiff Bryant asked "really, who did this?" Defendant Rudolph did not respond; did not make any effort to determine who was responsible for loading the picture onto Plaintiff Bryant's computer; did not investigate who was responsible for the conduct despite that fact he was required to investigate racial discrimination; and did not report this incident to the City Manager as he was required to do.  Only persons that worked for Defendant City had access to Plaintiff' Bryant's computer and the ability to load the photograph on Plaintiff Bryant's computer.  Plaintiff Bryant did not load said photograph onto the computer.

21.     On or about September 25, 2012, Defendant Rudolph issued disciplinary action to Plaintiff Robinson for his involvement in a fleet accident that occurred three (3) months earlier on or about June 24, 2012.  Other white officers, including, but not limited to Danny Williams, had been involved in several accidents; however, they were not issued disciplinary action.

22.     On or about June 6, 2013, Sergeant Schroeder issued Plaintiff Robinson disciplinary action for an infraction regarding his duties at the jail.  Other white officers, including, but not limited to Officer Foshee, committed the same or similar actions; however, they were not disciplined.

23.     On or about June 13, 2013, Plaintiff Robinson filed a written complaint with the City regarding racism, racial discrimination and inequality in the workplace.  In said written complaint, Plaintiff Robinson reported a number of illegal discriminatory acts, including, but not limited to racially discriminatory actions by Sergeant Schroder.  Plaintiff Robinson complained that Sergeant Schroeder was giving preference to white officers and that Sergeant Schroeder stated to Plaintiff Robinson "what's up my NIGGA."

24.     Despite Plaintiff Robinson's written complaint and request to be placed under another sergeant while the complaint was being investigated, Plaintiff Robinson was forced to continue working under Sergeant Schroeder and the racially discriminatory working environment.

25.     On June 17, 2013, Plaintiff Robinson filed a Charge of Discrimination with the EEOC.

26.     As a result of the racially hostile working environment, Plaintiff Robinson's, working conditions were affected.  For example, Plaintiff Robinson was forced to take a number of days off and was prescribed medication to deal with the stress associated with working in this filthy and disgusting work environment.

## 2.  The SR911

27.     In March 2013, Plaintiff Payne, and others, began voicing his concerns regarding the police department's use of a particular gun, the SR911.  While on-duty and off-duty, Plaintiffs expressed that the guns had not been adequately tested; that the guns were unsafe for the citizens and officers; that the police officers had not received adequate training to use the guns; and using the guns would put officers in danger. Importantly, Defendant Rudolph and several Lieutenants did not complete the required training to carry the SR911.

28.     Thereafter, Lieutenant Nicki Flores ("Flores"), at the direction of Defendant Rudolph, began interrogating Plaintiff Payne regarding his concerns.   Flores told Plaintiff Payne that only one person could have an opinion in the police department—Defendant Rudolph.   Flores reminded Plaintiff Payne that "back in the day" officers were terminated for voicing their concerns.

29.     On or about April 8, 2013, Plaintiff Groom started working with Defendant City.

30.     On or about May 8, 2013, Flores verbally reprimanded many officers, including Plaintiff Payne and Plaintiff Groom, for voicing their concerns regarding the SR911 and warned them not to do so any more.

31.     On or about May 9, 2013, Plaintiff Groom questioned whether the officers would be required to qualify with the unsafe SR911.

32.     On or about May 10, 2013, Defendant Rudolph verbally chastised Plaintiff Payne for expressing his concerns over the SR911 and demanded that Plaintiff Payne turn in his badge. Defendant Rudolph sent Plaintiff Payne home with instructions to think about whether Plaintiff Payne wanted to work with Defendant City.  Defendant Rudolph warned Plaintiff Payne that he too would be thinking about whether he wanted Plaintiff Payne to work for Defendant City.

33.     On or about May 17, 2013, Plaintiff Groom voiced his concerns regarding his ability to safely use a SR911 due to his lack of training.

34.     On or about May 21, 2013, Plaintiff Groom voiced his safety concerns regarding the SR911 and difficulties he was having with the gun while practicing with the gun.

35.     On or about May 22, 2013, Defendant Rudolph terminated Plaintiff Groom.  Defendant Rudolph failed to provide Plaintiff Groom with a reason for termination.

36.     Plaintiff Groom could not appeal Defendant Rudolph's decision to terminate him because Plaintiff Groom had not completed his six-month probationary period.  Specifically, pursuant to Article VI (Employee Probationary Period) of the City of Red Employee Policy Manual, an employee that has not completed a six-month probationary period "may not elect to use the appeal process".  Defendant City, by and through the City Council, approved the City of Red Oak Employee Policy Manual.

37.     Plaintiff Payne, Plaintiff Groom and others filed a grievance regarding the above-referenced concerns with the City, including the City Manager.

38.     To add insult to injury, Defendant Rudolph classified Plaintiff Groom's termination as a "General Discharge", a classification only used when police officers are terminated for cause. This classification affected Plaintiff Groom's ability to obtain another job in law enforcement. Notably, Defendant City failed to even present to the hearing regarding Plaintiff Groom's classification instead choosing to force Plaintiff Groom to retain counsel and appeal this classification.  Even after being ordered to change the termination classification, Defendants delayed changing the classification.

39.     Thereafter, Plaintiffs were subjected to intensive and intrusive interrogation by the City Attorney. In fact, the City ordered some of the complaining officers to submit themselves for polygraph examinations and interrogated them during the examinations as if they were the harassers or offenders  rather than  the victims.  The polygraphs were performed in a room so small that their attorney could not be present during the examination.  One attorney for the plaintiffs objected on numerous occasions to the content of the questions being asked and the conduct of the polygraph operators towards the officers.  Plaintiffs' counsel had an agreement as to the nature, scope and questions to be asked during the polygraph.  The polygraph operators ignored the agreement.  In spite of the conduct of the operators, based upon information and belief, all Plaintiffs passed their polygraph examinations and Defendant Rudolph failed his.

40.     After the grievance was submitted, things got worse.  Accordingly, on November 7, 2013, Plaintiff Payne, *inter alia*, filed an Original Complaint.  In said Original Complaint, Plaintiff Payne alleged, *inter alia*, that Defendants violated his first amendment right to free speech and right to redress of grievances pursuant to 42 U.S.C. 1983.

41.     After the filing of the Original Complaint, Defendant City continued to be harass, intimidate, ridicule and retaliate against Payne. Any attempt to reach out to superiors, command staff and other officers were rebutted.

42.     For example, on or about December 3, 2013, Plaintiff Payne sustained an on-the-job injury when he twisted his ankle while in pursuit of an individual.  Plaintiff Payne timely reported this injury to Defendant City by signing an "Employer's First Report of Injury or Illness" form.

43.     On December 20 and 21, 2013, Plaintiff Payne was unable to work as a result of physical pain he was having related to the injury; therefore, Plaintiff Payne notified his Sergeant that he was "sick" and would be using sick leave.  Notably, Plaintiff Payne had sought medical treatment from his medical provider regarding his pain who advised Plaintiff Payne to remain off of his leg for a couple of days.

44.     Despite that fact that no charges or allegations were pending against Plaintiff Payne, on or about December 21, 2013, Defendant Brock commenced a pseudo-investigation regarding Plaintiff Payne even going to Plaintiff Payne's residence to take photographs and video of Plaintiff Payne's residence.

45.     Upon his return to work, Plaintiff Payne was closely observed and immediately upon his return, Defendant City, by and through Defendant Brock and its agents, engaged in a series of retaliatory actions aimed at cloaking their unlawful retaliatory actions with pretextual reasons for taking adverse employment actions against Plaintiff Payne.

46.     Specifically, on or about December 23, 2013, Defendant City and Defendant Brock commenced a full-blown investigation into whether Plaintiff Payne was "sick" when he took the sick leave referenced in Paragraph 51 above.  In summary, Defendants' investigation consisted

of the following: (1) mandating that Plaintiff Payne immediately respond to questions without conferring with his attorneys and without leaving Defendant Brock's office until he did so; (2) mandating that Plaintiff Payne immediately respond to questions in violation of its own policies and practices regarding Administrative Investigations; (3) chastising Plaintiff Payne for stating he was "sick" instead of stating he was diagnosed with bone spurs that caused pain; (4) interrogating Plaintiff Payne regarding his medical condition; (5) initiating an investigation within an investigation to determine if Plaintiff Payne properly reported his on-the-job injury; and (6) interrogating Plaintiff Payne regarding every minute and hour of his whereabouts while on worker's compensation leave.  Defendant Brock's findings were unsupported and conclusory. Despite this, as a result of Defendant Brock's investigation findings, Plaintiff Payne was suspended on February 13, 2014.

47.     On the very day Plaintiff Payne was suspended and prior to the expiration of the time permitted for Plaintiff Payne to contest the findings and/or appeal the suspension, on or about February 13, 2014, Defendant City, by and through the new Chief of Police Garland Wolf and Head of the Police Department, submitted a *Brady v. Maryland* letter ("Brady Letter") to the Ellis County District Attorney's Office defaming Plaintiff Payne by alleging he was dishonest. These allegations were based on Defendant Brock's bias, retaliatory and conclusory investigation findings.  The allegations in the letter about Plaintiff Payne were stigmatizing and in effect provided the Ellis County District Attorney with only one choice in acting in response to the letter.  Plaintiff Payne was not provided an opportunity to appeal the decision to send said letter to the Ellis County District Attorney's Office.

48.     In fact, five days later, and well before the time permitted for Plaintiff Payne to contest and/or appeal the subject suspension, on or about February 18, 2014, Ellis County District

Attorney Patrick  ("Wilson") responded to the Brady Letter regarding Plaintiff Payne stating that he could no longer sponsor Plaintiff Payne as a witness in Ellis County ("Wilson's Response"). Plaintiff Payne was not immediately notified of Wilson's Response.  In fact, Defendants waited over a week to notify Plaintiff Payne regarding Wilson's Response.  As a result of Wilson's Response, Plaintiff Payne can no longer pursue a career in law enforcement and his professional career has been destroyed.

49.     After receiving this letter from Wilson, Defendant City and Defendant Brock continued in their retaliatory and harassing actions toward Plaintiff Payne.  Specifically, on or about February 26, 2014, Defendants initiated another investigation to allegedly determine if Plaintiff Payne was fit for duty in light of Wilson's Response.  The biased, retaliatory and harassing investigation was conducted merely to provide a pretextual reason for taking an adverse employment action against Plaintiff Payne.  Defendant Brock's conclusory and defamatory findings regarding the investigation reflect just that.

50.     On or about March 3, 2014, Plaintiff Payne was terminated and his termination was classified as a dishonorable discharge.

### E. Count 1—Racial Discrimination under Title VII and TCHRA

51.     Plaintiffs Bryant and Robinson incorporate by reference the allegations made above.

52.     Plaintiffs Bryant and Robinson are employees within the meaning of Title VII and TCHRA and belongs to a class protected under the statute, namely they are African-American men.

53.     Defendant City is an employer within the meaning of Title VII and TCHRA.

54.     Defendant City intentionally discriminated against Plaintiffs Bryant and Robinson because of their race by creating a racially hostile work environment.  Specifically, Plaintiffs

Bryant and Robinson belong to a protected group, were subjected to unwelcome verbal and physical conduct constitution harassment, which harassment was based on race, the harassment complained of affected a term, condition, or privilege of employment.

55.     Plaintiff Bryant's and Plaintiff Robinson's immediate supervisor, Defendant Rudolph caused this racially hostile work environment.

56.     Defendant City failed to exercise reasonable care to prevent, cure and correct any racially harassing behavior, even after the original complaint was filed.

57.     In addition, Defendant City's negligence led to the creation and/or continuation of the racially hostile working environment.   Specifically, Defendant City failed to prevent racial harassment from occurring at the workplace by, but not limited to the following: failing to monitor the workplace; failing to provide an adequate system for registering racial harassment complaints; failing to respond to racial harassment complaints; and discouraging complaints from being filed.

### F. Count 2-First Amendment Retaliation (Free Speech) pursuant to 42 U.S.C. §1983

58.     Plaintiffs Groom and Payne incorporate by reference all of the allegations made above.

### 1.  Plaintiff Groom's Claim Against Defendant City and Defendant Rudolph

59.     Defendant City and Defendant Rudolph violated Plaintiff Groom's right to free speech guaranteed by the First Amendment to the United States Constitution.

60.     Specifically, Plaintiff Groom made statements that involved a matter of public concern and that are constitutionally protected under the First Amendment.

61.     Plaintiff Groom's interest in making these statements outweighs any interest of Defendants in promoting the efficient operation and administration of government services.

62.     Plaintiff Groom's speech was a substantial and motivating factor in Defendant City's, and Defendant Rudolph's adverse actions against Plaintiffs Groom, including his termination.

63.     The aforementioned adverse employment action and harassment occurred because Plaintiff Groom exercised his right to free speech on a matter of public concern under the United States Constitution.

64.     The aforementioned deprivations were done under color or state law, ordinance, regulation and custom or usage.  Defendant City and Defendant Rudolph are liable because their actions were committed while acting under color of state law.  Defendant City and Defendant Rudolph knew or should have known and/or were deliberately indifferent to, the violation of Plaintiff Groom's rights.

65.     Defendant City is liable to Plaintiff Groom because Plaintiff Groom's injuries were caused by the unconstitutional actions of municipal policymakers and/or a municipal policy. Specifically, Defendant Rudolph, Head and Chief of the Police Department, terminated Plaintiff Groom. Defendant Rudolph's decision to terminate Plaintiff Groom could not be appealed because Defendant City's policies provide that probationary employees, such as Plaintiff Groom, cannot appeal a termination.  Thus, Defendant Rudolph is an official with final policymaking authority and Defendant City should be liable to Plaintiff Groom.

66.     Defendant Rudolph is liable to Plaintiff Groom because the law regarding First Amendment retaliation, as alleged *supra*, is clearly established and Defendant Rudolph knew or should have known that taking the subject actions was a violation of Plaintiff Groom's clearly established constitutional rights.

## 2.  Plaintiff Payne's Claims against Defendant Brock

67.     Defendant Brock violated Plaintiff Payne's right to free speech guaranteed by the First Amendment to the United States Constitution.

68.     Specifically, Plaintiff Payne made statements that involved a matter of public concern and that are constitutionally protected under the First Amendment.

69.     Plaintiff Payne's interest in making these statements outweighs any interest of Defendants in promoting the efficient operation and administration of government services.

70.     Plaintiff Payne's speech was a substantial and motivating factor in adverse actions taken against Plaintiff Payne, including, but not limited to Plaintiff Payne's suspension and termination.

71.     The aforementioned adverse employment actions and harassment occurred because Plaintiff Payne exercised his right to free speech on a matter of public concern under the United States Constitution.

72.     The aforementioned deprivations were done under color or state law, ordinance, regulation and custom or usage. Defendant Brock is liable because the actions were committed while acting under color of state law.  Defendant Brock knew or should have known and/or was deliberately indifferent to the violation of Plaintiff Payne's rights.

73.     Defendant Brock is liable to Plaintiff Payne because the law regarding First Amendment retaliation, as alleged *supra*, is clearly established and Defendant Brock knew or should have known that taking the subject actions was a violation of Plaintiff Brock's clearly established constitutional rights.

### G. Count 3-First Amendment Retaliation (Redress of Grievances)
### pursuant to 42 U.S.C. §1983

74.     Plaintiffs Groom and Payne incorporate by reference all of the allegations made above at paragraphs 27-49.

### 1.  Plaintiff Groom's Claims Against Defendant City and Defendant Rudolph

75.     Defendant City and Defendant Rudolph violated Plaintiff Groom's right to free speech guaranteed by the First Amendment to the United States Constitution.

76.     Specifically, Plaintiff Groom filed a grievance that was constitutionally protected under the First Amendment.

77.     Plaintiff Groom's grievances was a substantial and motivating factor in Defendant City's and Defendant Rudolph's decisions and actions against Plaintiff Groom, including in the termination of Plaintiff Groom and the designation of Plaintiff Groom's termination.

78.     The aforementioned adverse employment actions and harassment occurred because Plaintiff Groom exercised his right to free speech.

79.     The aforementioned deprivations were done under color or state law, ordinance, regulation and custom or usage.  Defendant City and Defendant Rudolph are liable because their actions were committed while acting under color of state law.  Defendant City and Defendant Rudolph knew or should have known and/or were deliberately indifferent to, the violation of Plaintiff Groom's rights.

80.     Defendant City is liable to Plaintiff Groom because Plaintiff Groom's injuries were caused by the unconstitutional actions of municipal policymakers and/or a municipal policy. Specifically, Defendant Rudolph, Head and Chief of the Police Department, terminated Plaintiff Groom and improperly designated his termination. Defendant Rudolph's decision to terminate Plaintiff Groom could not be appealed because Defendant City's policies provide that

PLAINTIFFS' SECOND AMENDED COMPLAINT                                                          15

probationary employees, such as Plaintiff Groom, cannot appeal a termination.  Thus, Defendant Rudolph is an official with final policymaking authority and Defendant City should be liable to Plaintiff Groom.

81.     Defendant Rudolph is liable to Plaintiff Groom because the law regarding First Amendment retaliation, as alleged *supra*, is clearly established and Defendant Rudolph knew or should have known that taking the subject actions was a violation of Plaintiff Groom's clearly established constitutional rights.

### 2.  Plaintiff Payne's Claims against Defendant Brock

82.     Moreover, Defendant Brock violated Plaintiff Payne's right to free speech guaranteed by the First Amendment to the United States Constitution.

83.     Specifically, Plaintiff Payne filed: (1) a constitutionally protected grievance with Defendant City; and (2) a lawsuit against Defendant City.   Both of those actions are constitutionally protected under the First Amendment.

84.     Plaintiff Payne's grievance and/or lawsuit were a substantial and motivating factor in Defendant Brock's decisions and actions against Plaintiff Payne.

85.     The aforementioned adverse employment actions and harassment occurred because Plaintiff Payne exercised his right to free speech on a matter of public concern under the United States Constitution.

86.     The aforementioned deprivations were done under color or state law, ordinance, regulation and custom or usage. Defendant Brock is liable because the actions were committed while acting under color of state law.  Defendant Brock knew or should have known and/or was deliberately indifferent to the violation of Plaintiff Payne's rights.

87.     Defendant Brock is liable, as to Plaintiff Payne's allegations only, because the law regarding First Amendment retaliation, as alleged *supra*, is clearly established and Defendant Brock knew or should have known that taking the subject actions was a violation of Plaintiff Payne's clearly established constitutional rights.

## H. Damages

88.     As a direct and proximate result of Defendants' actions, Plaintiffs suffered the following injuries and damages:

   a.     Plaintiff Groom – back pay (wages and off-duty jobs);

   b.     Plaintiff Payne-back pay (wages and off-duty jobs); and

   c.     Plaintiffs Boone and Robinson – compensatory damages (including past and future mental anguish).

## I. Attorney Fees and Costs

89.     Plaintiffs are entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. §2000e-5(k); 42 U.S.C. §1983 and TCHRA.

## J. Jury Demand

90.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury on all issues.

## K. Prayer

91.     For these reasons, Plaintiffs asks for judgment against Defendants for the following:

   a.      actual damages;

   b.      compensatory damages;

   c.      prejudgment and post-judgment interest;

   d.      reasonable attorney's fees;

   e.      costs of suit;

   f.      equitable relief;

   g.      injunctive relief; and

   i.      any and all other damages to which they are entitled.


                              Respectfully submitted,

                               /s/  Melissa Morales Fletcher
                              Melissa Morales Fletcher, *Of Counsel*
                              State Bar No. 24007702
                              Lawrence Morales II
                              State Bar No. 24051077
                              **THE MORALES FIRM, P.C.**
                              115 E. Travis, Suite 1530
                              San Antonio, Texas 78205
                              Telephone: (210) 225-0811
                              Facsimile: (210) 225-0821
                              melissa@themoralesfirm.com
                              Email: melissa@themoralesfirm.com
                              Email:  lawrence@themoralesfirm.com

John C. Ramsey
State Bar No. 24027762
8584 Katy Freeway, Suite 105
Houston, TX 77024
Phone: (713) 489-7577
Fax:  (888) 858-1452
Email: john@rhlawgroup.com


Rodney Ramsey
State Bar No. 24040103
LAW OFFICE OF RODNEY PAT RAMSEY
201 E. Main Street, Suite 203
Waxahachie, Texas 75165
Phone: (972) 935-9111
Fax: (972) 935-0224
Email: occides@hotmail.com

***Attorneys for Plaintiffs***


## CERTIFICATE OF SERVICE

I do hereby certify that on the 25th day of August, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM-ECF system, which will send notification of such filing to the following:

Marigny Lanier
Robert Maris
MARIS & LANIER, P.C
3710 Rawlins Street, Suite 1550
Dallas, Texas 75219
***Via  CM/ECF***

 /s/  Melissa Morales Fletcher
Melissa Morales Fletcher